


**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CATHERINE AMBROSE, INDIVIDUALLY AND AS THE REPRESENTATIVE OF THE ESTATE OF STEVEN HARRY AMBROSE, DECEASED, AND AS A FRIEND FOR EMMA AMBROSE, A MINOR<br>Plaintiff, | § | |
| v. | § | Case No. 3-10-CV-691-F |
| UNITED STATES OF AMERICA,<br>Defendant. | § | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant United States of America's Motion for Summary Judgment (Docket No. 26), filed on June 30, 2011. After considering the motions and pleadings of both parties, as well as applicable law, the Court is of the opinion that the United States' Motion should be DENIED.[1]

### Background

Steven Ambrose was a United States veteran who suffered from posttraumatic stress disorder and severe depression. On March 10, 2008, Mr. Ambrose was admitted to the Dallas VA Medical Center (DVAMC) as a result of an attempted suicide. Mr. Ambrose remained in the mental health facility until April 4, 2008, when he committed suicide by hanging himself with his bed sheet. On April 6, 2010, Plaintiff Catherine Ambrose brought the current action against the United States alleging medical negligence

[1] This terminates Docket No. 19.

and seeking survival and wrongful death damages, including mental anguish damages for lost companionship.

Mr. Ambrose committed suicide in the early evening of April 4, 2008. The VA Police were the first law officers to arrive at the scene, but the Dallas Police Department arrived soon after and took control of the crime scene. VA Police Officer Derrick Sharp was one of the first to arrive and he questioned several witnesses, including Jerry Foreman, the Nursing Assistant on duty for DVAMC. An offense report (the "Offense Report") was prepared by VA Police Lieutenant Brocks around 3 a.m. the following morning. In creating the Offense Report, Brocks used the handwritten notes that Officer Sharp had taken during his interviews. Officer Sharp did not have any involvement in reviewing or creating the Offense Report other than giving Officer Brocks his notes. It does not appear that Foreman ever made a written statement or reviewed the Offense Report to ensure its accuracy and completeness.

The Offense Report indicates, among other things, that Foreman told Officer Brocks that Mr. Ambrose asked for his shoelaces an hour before he committed suicide. Officer Sharp has also testified that Foreman told him Mr. Ambrose requested the shoelaces an hour before the suicide. Foreman denied this request because he was concerned that Mr. Ambrose would use them to hurt himself. Foreman has testified that this is not what he told Officer Brocks because Mr. Ambrose asked for the shoelaces three to four days prior to the incident.

Plaintiff's expert, Dr. Stephen Mark, alleges that Foreman breached the applicable standard of care by failing to respond to "an apparent major change in suicidal risk." Dr. Mark's current opinion appears to rely entirely upon the statements contained in the Offense Report because Dr. Mark's first report concluded that there were no violations of any standards of care. However, Dr. Mark subsequently changed his opinion after he was provided a copy of the Offense Report. Dr. Mark has testified that his opinion is based on the request being made an hour before the incident and that his opinion would change if the request was actually made several days before the suicide. The United States has brought the current Motion requesting summary judgment because the report is inadmissible hearsay and Dr. Mark's opinion is unreliable because it is based on this hearsay.

**Standard**

Summary judgment is appropriate if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). In the summary judgment process, both movants and non-movants bear burdens of proof. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322-23.

The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.*

at 323. At that point, the burden shifts to the non-moving party to produce evidence in support of its claims or affirmative defenses. *Id.* at 324. The non-moving party must produce "specific facts" showing a genuine issue for trial and not mere general allegations. Fed. R. Civ. P. 56(e); *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). It is important to note that "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). "The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To the extent that facts are undisputed, the Court may resolve the case as a matter of law. *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994).

**Discussion**

The Court is limited to consideration of admissible evidence when ruling on a motion for summary judgment, so the first question the Court must answer is whether the

Offense Report is admissible. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995). The Court will then address whether Dr. Mark's opinion may be appropriately considered.

Before addressing these issues, it should be noted that exclusion of the Offense Report does not mean that there is an absence of any genuine issue of material fact. Foreman has testified that Mr. Ambrose asked for his shoelaces and the parties merely dispute when Mr. Ambrose made his request. The United States repeatedly attacks the Offense Report's credibility because Officer Sharp never reviewed it, but this is irrelevant for summary judgment purposes because Officer Sharp has testified that Foreman told him Mr. Ambrose requested the shoelaces an hour before the suicide. It is true that Foreman has contradicted Officer Sharp's testimony about when the request for shoelaces was made, but the decision of who to believe is a question of fact for the jury. Thus, Officer Sharp's testimony is a sufficient basis for denying the United States' Motion for Summary Judgment.

That being said, the Court will discuss the admissibility of the Offense Report. To reiterate, the Government argues that the report is hearsay and inadmissible. Hearsay statements are admissible if they meet one of the exceptions under the Federal Rules of Evidence. Fed. Rule Evid. 802. Thus, police investigative reports are admissible in certain circumstances under the business records exception. *See* Fed. R. Evid. 803(6); *see also United States v. Scallion*, 533 F.2d 903, 915 (5th Cir. 1976); *Harris v. Browning–Ferris Indus., Chem. Svcs., Inc.*, 635 F. Supp. 1202, 1209 (M.D. La. 1986). "However, when police reports contain witness statements, and the witness statements are offered to

prove their truth, the statements themselves generally are inadmissible." *Jacobs* v. *City of Port Neches*, 7 F. Supp. 2d 829,835 (E.D. Tex. 1998); *see also United States v. Dotson*, 821 F.2d 1034, 1035–36 (5th Cir. 1987) (holding that witness statements in police report inadmissible); *United States v. Halperin*, 441 F.2d 612, 618–19 (5th Cir. 1971) (investigative report not admissible as public record under Fed. R. Evid. 803(8)); *Ariza v. City of New York*, 139 F.3d 132, 133–34 (2d Cir. 1998) (witness statements in police investigative report inadmissible as business record). Thus, depending on the circumstances, the Offense Report made by Officer Brocks may or may not be inadmissible hearsay.

The Offense Report contains three potential levels of hearsay under Rule 805: (1) the Offense Report's statement by Officer Brocks based on Officer Sharp's notes; (2) Officer Sharp's statements regarding what Foreman told him; and (3) Foreman's statements regarding what Mr. Ambrose told him. *See U.S. v. Dotson*, 821 F.2d 1034, 1035 (5th Cir. 1987). The Offense Report may not be admitted if any one of these levels is inadmissible hearsay.

Plaintiffs argue that the first level of potential hearsay, the Offense Report itself, is admissible under Rule 803(8)'s public records and reports exception because it is a determination or factual finding of an agency that resulted from an investigation made pursuant to authority granted by law. The United States contends that the Offense Report should be excluded as untrustworthy because (1) it was created by Officer Brocks, who merely summarized Officer Sharp's handwritten notes regarding conversations

Officer Brocks was not a party to; (2) neither Officer Sharp not the witnesses ever reviewed or verified the Offense Report; (3) Foreman has refuted the accuracy of the Offense Report; (4) there has been no production of Officer Sharp's notes indicating Foreman's alleged statement; and (5) the Offense Report and its contents are unsworn, out-of-court statements. "In the Fifth Circuit, Rule 803(8)(C) reports are presumed to be trustworthy and admissible; therefore, it is the burden of the party opposing admission to demonstrate a lack of trustworthiness." *Reliastar Life Ins. Co. v. Thompson*, 2008 WL 4327259, *4 (S.D. Tex. 2008) (citing *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)).

The trustworthiness of an 803(8)(C) report is dependent on whether "the report was compiled or prepared in a way that indicates that its conclusions can be relied upon." *Id.* at 1307; *see also id.* at 1305 (relevant factors in determining trustworthiness include, "(1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivational problems [within the reporting entity]"). The Court finds that Officer Brock's statements creating the Offense Report could have sufficient trustworthiness, based on present information, because Officer Sharp has testified to their accuracy. Further, the investigation appears to have been timely and there is no indication that either of the Officers lacked the necessary skills to conduct a proper interview. Moreover, the Offense Report could pass the test because it seems unlikely that either of the Officers would have any motivation to alter their investigation in a way that would cause harm to their employer.

The second level of potential hearsay involves Officer Sharp's statements regarding what Foreman told him. Plaintiffs contend that this level is excluded as non-hearsay because it is an admission by a party-opponent. Rule 801(d)(2) notes that a statement is not hearsay if "[t]he statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Foreman's statement related to his nursing duties to Ambrose and they were made within the scope of his employment with DVAMC. The United States has not offered any arguments that directly respond to this level of hearsay other than a citation to *Rock v. Huffco Gas & Oil Co.*, but *Rock* is inapplicable. 922 F.2d 272, 281 (5th Cir. 1991) ("It is obvious from the depositions of [the plaintiff's supervisors] that they were simply documenting [the plaintiff's] account of the alleged accidents. Nothing in the accident reports, themselves, indicates that the defendants adopted the version of the facts as reported by [the plaintiff]."). Accordingly, the Court finds that Officer Sharp's statements regarding when Foreman told him the request for shoelaces was could escape a hearsay designation, as things presently stand.

The final level of hearsay involves Foreman's statement regarding Mr. Ambrose's request for his shoelaces. The parties do not dispute that this request was made; they merely dispute when it occurred. Plaintiffs argue that Mr. Ambrose's request cannot be hearsay because there was no "statement." *See* Fed. R. Evid. 801(a) (defining a statement as an oral or written assertion). Yet the authority that Plaintiffs cite in support of their

position is distinguishable. The first case, *U.S. v. Vest*, 842 F.2d 1319 (1st Cir. 1988), held that several questions during a phone call were not "offered . . . to prove the truth of the matter asserted" under Fed. R. Evid. 801(c). The second case, *U.S. v. Parker*, 142 Fed. App'x 19 (3rd Cir. 2005), is an unreported decision holding that a caller's question, which asked the recipient whether he received a package, could not have been intended as an assertion that the recipient did receive the package. The questions in *Vest* and *Parker* merely sought information, but Mr. Ambrose's question was certainly intended as an assertion that he wanted his shoelaces. Despite indications that Mr. Ambrose's request may have been a statement, it is difficult to rule on the admissibility of the Offense Report at this stage. This is a question that would be more appropriately considered at the trial stage because there has been no indication what purpose Plaintiffs intend to admit the Offense Report for. Accordingly, the Court declines to rule on whether any of the Offense Report's three potential levels of hearsay render it inadmissible at this time.

Plaintiffs' claims arise under the Federal Tort Claims Act ("FTCA"). The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred. 28 U.S.C. §§ 1346(b)(1), 2674. State law controls liability for medical malpractice under the FTCA. *Ayers v. United States*, 750 F.2d 449, 452 n. 1 (5th Cir. 1985).

"Under Texas law, in a medical malpractice action, the plaintiff bears the burden of proving (1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003)). The plaintiff must establish the standard of care as a threshold issue before the fact finder may consider whether the defendant breached that standard of care to the extent it constituted negligence. *Id.* "Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required" to meet the plaintiff's burden of proof. *Hood v. Phillips*, 554 S.W.2d 160, 165-66 (Tex. 1977).

Thus, the Court must determine whether Dr. Mark's opinion is admissible because his expert opinion is required under Texas law. The United States argues that Dr. Mark's opinion should be excluded because it unreasonably relies on the Offense Report. Yet it is well settled that "Rule 703 permits experts to base opinion testimony on evidence that is inadmissible under the hearsay, authentication and best evidence rules." 29 Wright, Miller & Kane, *Federal Practice and Procedure: Evidence* § 1503 (1st ed. 2011); *see also Hopper v. M/V UBC Singapore*, 2010 WL 2787806, *3 (S.D. Tex. 2010). Further, the United States' arguments regarding Dr. Mark's reliance on the Offense Report ignore the fact that Dr. Mark could just as easily base his opinion on Officer Sharp's testimony.

It is apparent that the United States' main objection to Dr. Mark's reliance on the Offense Report concerns his adoption of Officer Sharp's statement regarding when

Foreman told him the shoelaces were requested. Although Dr. Mark has testified that his opinion would change if Mr. Ambrose requested his shoelaces when Foreman testified he did, this does not mean that Dr. Mark's opinion must be excluded simply because it is based on the premise that Officer Sharp's testimony is correct.

The current situation differs from the two cases cited by the United States. First, *Slaughter v. S. Talco Co.*, 919 F.2d 304, 307 (5th Cir. 1990), involved expert reports that "were replete with 'so many obvious errors as to be of no value to the trier of fact.'" Unlike *Slaughter*, there is no indication that Dr. Mark's opinion is simply a "bare conclusion[] derived from erroneous data." *Id.* Second, the *Seaman v. Seacor Marine L.L.C.* court held that an expert's report was unreliable because the expert did not establish general causation, her opinion was "neither factually supported nor scientifically reliable," and because her "background information concerning [the plaintiff's] exposure . . . [was] so sadly lacking as to be mere guesswork." 326 Fed. App'x 721, 726, 728 (5th Cir. 2009). Yet the only issue regarding Dr. Mark's opinion appears to be his choice to base it on Plaintiffs' version of a disputed fact. The United States does not attack the scientific methods used in Dr. Mark's opinion and these challenges relate more to the weight to be given to his testimony than to its admissibility. *See Hopper*, 2010 WL 2787806 at *3. Consequently, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*

*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Accordingly, Dr. Mark's opinion is admissible.

The United States also argues that Dr. Mark's opinion does not make the Offense Report admissible to prove the truth of the matters asserted. This is certainly true, but the Offense Report may potentially be offered to provide a basis for his opinion. *See Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, Fed. R. Evid. 703, but not as general proof of the truth of the underlying matter, Fed. R. Evid. 802.); *In re Rodriguez*, 95 F.3d 54, *2 n. 3 (5th Cir. 1996). Regardless, the proper scope of Dr. Mark's opinion and his testimony regarding the Offense Report has not been fully briefed at this time and it is not essential to the Court's decision regarding the United States' Motion for Summary Judgment.

**Conclusion**

For the reasons stated above, the Court finds that there is a question of material fact, which prevents summary judgment at this time. Accordingly, the United States' Motion for Summary Judgment is DENIED.

It is so ORDERED.

Signed this 23rd day of August, 2011.

Royal Furgeson
Senior United States District Judge